No. 33,532

JOHN CROFT, *Appellant,* v. C. A. CONLEY, BEN COLCHENSKY, OKMULGEE SUPPLY COMPANY and W. C. WILLIAMSON, *Appellees.*

(73 P. 2d 1047)

Opinion filed December 11, 1937.

*Hubert Horning,* of Howard, for the appellant.

*Thomas C. Forbes, Carl C. Chase,* both of Eureka, and *Carland E. Smith,* of Okmulgee, Okla., for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action for specific performance of a contract or for damages in the alternative. There were four defendants. One was Conley, with whom plaintiff contracted. The question of plaintiff's right to relief against Conley is not before us, and cannot, of course, be treated. The relation of all of the defendants will appear presently. Plaintiff appeals from rulings sustaining the general demurrers of the defendants, Colchensky and Okmulgee Supply Company, a corporation, to plaintiff's amended petition. Defendant W. C. Williamson was merely made a party defendant on the ground of claiming some right, title or interest to the lease, the exact nature and character of which was unknown. His interest, if any, is not involved in this appeal.

Before we discuss the contents of the amended petition it will be helpful to understand some of the general facts and circumstances involved in this action. The contract sued upon was between the

plaintiff Croft and defendant Conley, and pertained to an oil and gas lease on which plaintiff was to perform some of the tasks which defendant Conley had agreed to perform for Colchensky, the record title owner. According to the contract between plaintiff and defendant Conley, plaintiff was to be paid for his services solely by Conley, and was to acquire a one-eighth interest in the lease. The contract between defendants Conley and Colchensky had been reduced to a memorandum, but had not yet been signed. Conley filed an answer to the original petition of plaintiff and a cross petition against the defendants Colchensky and the Okmulgee Supply Company, in which he set up the memorandum contract which was to be executed by him and Colchensky. Plaintiff incorporated that contract in his amended petition by reference. Certain portions of motions to make the original petition definite and certain had been sustained. Plaintiff attached to his amended petition certain exhibits in the form of letters, some of which will be referred to later. It is sufficient to state at this time that he expressly agreed with defendant Colchensky, prior to the performance of any services, to look solely to defendant Conley for compensation for services rendered, and in no wise to look to defendant Colchensky, or the lease, for payment. Plaintiff has not done any work on the lease.

All facts properly pleaded are, of course, admitted for the purposes of the demurrer. Plaintiff has summarized the material facts contained in the amended petition, which he contends are admitted. His statement of those facts will suffice for the present. It reads:

"The facts as admitted are as follows: Okmulgee Supply Corporation was the owner of an oil and gas lease, but the record title was carried in the name of Ben Colchensky, its officer and representative, for the reason that it had not been admitted to do business in Kansas. On this lease was an oil well in which were tubing, rods and casing. It was the desire of appellees to remove these from this well, and also to test the same to determine whether it would produce oil and/or gas in paying quantities.

"On or about May 4, 1936, Colchensky and Conley entered into an agreement. A memorandum of the terms and conditions of this agreement is set forth in the answer and cross petition of C. A. Conley. Colchensky drew, or caused to be drawn, this memorandum in writing and furnished it to Conley. This tubing, rods and casing were to be pulled by Conley, for which he was to be paid certain stipulated sums, and he was to clean out this well, under ream, reset casing and do anything else necessary, proper or expedient in his judgment to make this well a producing well; twenty days time was given, time being of the essence of this agreement. In the event Conley decided this well was a producer he would become an equal joint owner with the ap-

pellees in said lease, but he was to pay for one half of the materials left in the hole. And after that it was to be a jointly operated lease. In the event it was nonproductive, then Conley was to remove all materials therefrom and plug the hole at his own expense. It was contemplated that Conley would procure a contractor to do this work. He was to contact his contractor and obtain the two written letters from him and furnish them to Colchensky. These letters concerned insurance and work and supplies.

"On May 5, 1936, Conley entered into an agreement in writing with appellant wherein appellant would move his machinery, tools and equipment on said lease and perform the terms and conditions of the contract between Conley and Colchensky. Conley was to pay the operating expense as well as the costs of moving in. Appellant was to receive an undivided one-eighth interest in this lease for his performing this service.

"On May 5 appellant as contractor furnished the letters to Colchensky relative to not looking to appellees for work performed by him, and that he carried the necessary insurance.

"Before entering into this contract appellant inquired of Mr. Roberts, a managing officer of appellee corporation, as to whether the contract had been or would be signed, and in like manner he inquired of Oscar Bateman, the local manager and representative of appellees, and each of these persons falsely and fraudulently represented to appellant that the contract had been made and agreed on, and that the formality of signing the writing evidencing the same would be completed the following Wednesday, and that appellant would be justified in proceeding to contract with Conley to carry out the terms of the writing. At the time of making these inquiries he informed these persons his purpose and intent in contracting with Conley which was to perform the cleaning out and drilling operations required by the terms of the agreement between appellees and Conley.

"By reason of such false and fraudulent representations appellant was not only induced to enter into said contract with Conley, but was also induced to perform the acts, services and incur the expenses set forth. It was the intent and purpose of appellees to refuse to sign said writing with Conley at the time of said representations, and such representations were knowingly made falsely and fraudulently at the time they were made, and without which appellant would not have entered into the contract with Conley, and would not have performed the services set forth.

"Thereupon, appellant provided the machinery, tools and equipment necessary and incurred the expense of $227 in moving the same to this lease and afterward to another location, in addition to spending much time and effort himself, but appellees and Conley refused to permit the appellant to move his tools and machinery on said lease, so that he was compelled to and did leave the same on an adjoining lease pending proper arrangement to permit him to perform the services contracted to be performed by the terms of his contract. He was deprived of the use of his machinery, tools and equipment for 153 days at the reasonable rental value of $25 per day, aggregating the sum of $3,825.

"After entering into these agreements new and substantial oil developments took place on an adjoining property whereby the lease was greatly enchanced in value so that the value of the one eighth became $15,625."

For brevity we shall refer to the Okmulgee Supply Company, a corporation, as the supply company.

Is plaintiff entitled to a decree directing the defendants, Colchensky and the supply company, to assign to him an equal undivided one-eighth interest in the lease or to a judgment for damages in the alternative? Various difficulties at once present themselves in the rendering of such a decree. In the first place, what contract, if any, existed between those parties upon which specific performance could be decreed on any theory? They did not contract to assign a one-eighth or any other interest to plaintiff, nor did they agree to pay him for any services rendered on the lease. For the purpose of the demurrer we must, of course, assume the supply company was in fact the owner of the lease. We may also assume that Colchensky merely held the title for the supply company, and was in fact representing it. He did not agree to pay plaintiff for any services to be performed on the lease or to convey to him any interest in consideration of such services.

Plaintiff contends the contract between Conley and Colchensky contemplated Conley would obtain a contractor to perform the work which the contract required Conley to perform, and hence there existed privity of contract between him and the defendants Colchensky and the supply company. The contention cannot be sustained. In the first place, the contention such contract contemplated that whomever Conley employed was to do and perform all things which the Conley-Colchensky contract required Conley to perform, is entirely too broad. The contract precludes such a contention. It contemplated Conley, at his own expense, would do or cause to be done certain work preparatory to the making of a proper test of the well in question. True, it permitted Conley to obtain someone to do the work preparatory to testing. It, however, placed the responsibility of testing the well in order to determine whether it should be saved as a producing well, squarely on Conley. There is no allegation or contention on the part of plaintiff of any agreement between him and Conley, and much less between him and Colchensky, or the supply company, that his (plaintiff's) decision as to whether the well should be saved, was ever made. If there were such a contention it would be contrary to the express agreement between Conley and Colchensky. Moreover, Conley, according to his contract with Colchensky, was to receive a one-half interest in the lease only after he (Conley) had made the necessary test and had

determined to operate the lease. In the event of operation he would have been obliged to share in the expense of operation. Furthermore, if the well proved to be nonproductive Conley agreed to remove from the well all material which could reasonably be removed, and to plug the well at his own expense.

Plaintiff insists the amended petition states he would not have entered into the contract with Conley had the representatives of the supply company not deceived him by advising they would close the contract with Conley. Accepting that statement as correct, it still did not constitute an agreement on the part of the supply company to assign to plaintiff a one-eighth interest in the lease for any services he might perform for Conley and for which services Conley had agreed to pay plaintiff. That is not all that stands in the path of the plaintiff. He knew before he turned a wheel, and even before he moved a rig or any part of the necessary tools to this lease, that Colchensky had insisted upon Conley obtaining for him (Colchensky) a statement in black and white from whomever Conley might employ to assist him, that such person would look solely to Conley and not to him or the lease for his pay. Not only did plaintiff know that to be a fact, but he complied with the requirement in writing. The following is what he said to Colchensky by letter:

"MOLINE, KANSAS, May 5th, 1936.

"*Mr. Ben Colchensky, Okmulgee, Okla.*

"DEAR SIR—In compliance with a contract existing between yourself and C. A. Conley, of Tulsa, Okla., pertaining to the work to be done on a well located in the SE quarter of southwest quarter of sec. 3-30-9, Elk county, Kansas.

"It is hereby understood and agreed that I will look solely to C. A. Conley for full payment to me for work performed by me, and I will in no way look to you or the lease for payment.     Very truly yours,     JOHN CROFT."

The demurrers were properly sustained upon additional grounds, but the foregoing is sufficient.

The judgment is affirmed.